APPELLANT PRO SE
Todd Allen Clark
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Frances H. Barrow
Deputy Attorney General
Indianapolis, Indiana

In the

Indiana Supreme Court

**FILED**
Mar 12 2009, 12:36 pm

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

No. 35S05-0809-CV-506

TODD ALLEN CLARK,

*Appellant (Respondent below)*,

v.

MICHELLE D. CLARK,

*Appellee (Petitioner below)*.

Appeal from the Huntington Superior Court, No. 35D01-0702-DR-62
The Honorable Jeffrey R. Heffelfinger, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 35A05-0801-CV-26

**March 12, 2009**

**Sullivan, Justice.**

In Lambert v. Lambert, 861 N.E.2d 1176 (Ind. 2007), this Court held that pre-incarceration income should not be imputed to an imprisoned parent when setting an initial order of child support. But, until the question was before us, we declined to go further and decide whether or not incarceration constitutes a substantial change in circumstances justifying modifi-

cation of an existing child support obligation. That question is presented in this case and we conclude, based on the same reasoning we employed in Lambert, that modification is justified.

## Background

On June 15, 2007, the trial court ordered Todd A. Clark to pay child support in the amount of $53 per week. This figure was based on the minimum wage. Clark is now incarcerated, with a projected release date in 2013. Clark claims that he is unable to fulfill his support obligation because he makes less than $21 per month at his prison job assignment. Clark filed a Verified Petition for Abatement and/or Modification of Child Support Order requesting the trial court to reduce, revoke, or abate his child support obligation until his release. In his petition, Clark asserted that incarceration creates a substantial change in circumstances which would warrant modification of his child support obligation. The trial court denied Clark's petition. The court also noted that it was contrary to public policy for a person who engaged in criminal conduct to avoid a support obligation. Clark appealed.

The Court of Appeals reversed, holding that Clark's incarceration constituted a substantial change in circumstances that could justify a modification of his support obligation. Clark v. Clark, 887 N.E.2d 1021, 1025 (Ind. Ct. App. 2008). That Court reasoned that although this Court specifically limited our decision in Lambert to initial determinations of child support, Lambert's rationale applied equally to a modification request based on changed circumstances due to incarceration. Clark, 887 N.E.2d at 1024.[1]

We granted transfer, Clark v. Clark, 898 N.E.2d 1224 (Ind. 2008) (table), and now conclude that Lambert's holding extends to petitions to modify a child support obligation based the incarceration of an obligated parent.

---

[1] The trial court also found that public policy demands that an incarcerated parent's child support obligation cannot be set at less than minimum wage. The Court of Appeals held that based on the Commentary to Ind. Child Support Guideline 2, the minimum wage should not be interpreted as a cut-off amount for child support payments. Clark, 887 N.E.2d at 1025. We summarily affirm the decision of the Court of Appeals on this point. Ind. Appellate Rule 58(A)(2).

## Discussion

## I

The modification of child support orders is governed by statute, specifically Ind. Code § 31-16-8-1. This section provides that "[p]rovisons of an order with respect to child support . . . may be modified or revoked." Id. Except as provided in another statute which is not applicable here, modification may be made only:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

I.C. § 31-16-8-1(b).

Clark argues that his incarceration has resulted in changed circumstances so substantial and continuing as to make the terms of the current support unreasonable. In support of his argument, Clark relies on Lambert, 861 N.E.2d 1176.

Lambert addressed whether pre-incarceration income should be imputed to the obligor when setting an initial support order of an imprisoned parent. After reviewing various approaches in other states on the issue of calculating child support during incarceration, we stated that "[w]hile our Child Support Guidelines obligate every parent to provide some support even when they have no apparent present income, it was error to set support based on employment income that plainly would not be there during incarceration." Id. at 1176. We concluded that "in determining support orders, courts should not impute potential income to an imprisoned parent based

3

on pre-incarceration wages or other employment-related income, but should rather calculate support based on the actual income and assets available to the parent." Id. at 1177.

Criminal activity "reflects a voluntary choice, and carries with it the potential for incarceration and consequent unemployment." Id. at 1180. However, we distinguished between unemployment due to incarceration and unemployment that is voluntary by saying that "[t]he choice to commit a crime is so far removed from the decision to avoid child support obligations that it is inappropriate to consider them as identical." Id. We rejected the idea of suspending child support obligations while a parent is incarcerated as contrary to law. Rather, we supported the idea of permitting the minimum support requirements provided by the Child Support Guidelines, not imputing income. Id. at 1179-80. Lambert only "counsels against imputing pre-incarceration wages, salaries, commissions, or other employment income to the individual. A court may, obviously, still consider other sources of income when calculating support payments." Id. at 1182.

We reasoned that under the Guidelines, the concept of "voluntary unemployment or underemployment requires both the ability to earn more income, and the conscious choice on the part of a parent to reduce income." Id. at 1180. We concluded that I.C. § 31-16-6-1(a)(4)[2] requires that courts consider "the financial resources and needs of the noncustodial parent" when setting support orders. Id. Moreover, our decision stated that "[w]e believe the conclusion is also supported by the overarching policy goal of all family court matters involving children: protecting the best interests of those children." Id.

## II

On several occasions prior to our Lambert decision, the Court of Appeals addressed whether a petition for modification of child support due to voluntary criminal conduct is a valid rationale for abatement of an existing child support obligation. These cases held that incarcera-

---

[2] In an action for dissolution of marriage, legal separation, or child support, the court may order either or both parents to pay any amount reasonable for support of a child, after considering all relevant factors including: the financial resources of the custodial parent; the standard of living a child would have enjoyed if (1) the marriage had not been dissolved or (2) the separation had not been ordered; the physical or mental condition of the child and the child's emotional needs; and the financial needs of the noncustodial parent. I.C. § 31-16-6-1(a).

4

tion due to voluntary criminal conduct was not a valid rationale for abatement of an existing child support order. See Holsapple v. Herron, 649 N.E.2d 140, 141 (Ind. Ct. App. 1995) (holding that when a criminal act or the resulting consequences therefrom are the primary cause of an obligor's failure to pay child support, abatement of the obligation is not warranted); Davis v. Vance, 574 N.E.2d 330, 331 (Ind. Ct. App. 1991) (holding that it would be contrary to the Indiana Child Support Guidelines and to public policy favoring a child's security and maintenance to allow payments to abate based upon a willful, unlawful act of the obligor). In this post-Lambert case, the Court of Appeals concluded that it "no longer believe[d] these cases properly reflect the current status of the law." Clark, 887 N.E.2d at 1023.[3]

We agree. Strengthening marriages and relationships between children and non-custodial parents has emerged as a national strategy for enhancing the well-being of children.[4] In Lambert, we considered sociological evidence and concluded that "imposing impossibly high support payments on incarcerated parents acts like a punitive measure, and does an injustice to the best interests of the child by ignoring factors that can, and frequently do, severely damage the parent-child relationship." 861 N.E.2d at 1180. And studies have generally concluded that unsustainable support orders result in greater failure of non-custodial parents to pay their support obligations, making it "statistically more likely that the child will be deprived of adequate support over the long term." Id. at 1181.

Proscribing the consideration of incarceration as a substantial change in circumstances justifying the modification of a child support order is not in the best interest of children. When released, most obligated parents face the twin barriers of large arrearages and difficulty finding

---

[3] Since Lambert, the Court of Appeals has addressed petitions for modification of child support due to incarceration in addition to this case. See e.g., In re Paternity of E.C., 896 N.E.2d 923, 926 (Ind. Ct. App. 2008) (holding that the Lambert decision applies equally to requests for modification of child support due to incarceration).

[4] See Preamble for Ind. Parenting Time Guidelines (2009); U.S. Government Accountability Office, Healthy Marriage and Responsible Fatherhood Initiative: Further Progress Is Needed in Developing a Risk-Based Monitoring Approach to Help HHS Improve Program Oversight (2008), http://www.gao.gov/new.items/d081002.pdf; Responsible Fatherhood and Healthy Families Act of 2007, S. 1626, 110th Cong. (2007) (introduced by Senators Evan Bayh and Barack Obama specifically discussing the pressures on incarcerated parents of the child support system).

employment. Such a situation makes it more likely that the newly-released obligated parent will face jail time as a result of non-payment of child support or participate in the underground economy – once again straining family relationships, if not jeopardizing public safety. Lambert recognized the realities of incarceration for families, and is equally applicable to modifications of child support orders.

**III**

In light of our analysis in Lambert, we hold that in petitions to modify a support order, incarceration may serve as a changed circumstance so substantial and continuing as to make the terms of the support order unreasonable pursuant to I.C. § 31-16-8-1. Thus, it follows that a support obligation should be set based on the obligated parent's actual earnings while incarcerated (and other assets available to the incarcerated person). To the extent that prior opinions of the Court of Appeals like Holsapple v. Herron, 649 N.E.2d 140, and Davis v. Vance, 574 N.E.2d 330, are inconsistent with this conclusion, we disapprove those decisions.

As articulated in Lambert, a court may order the child support obligation to revert to the pre-incarceration level upon release, consistent with the modification recommendation. 861 N.E.2d at 1182. This has the effect of relieving the custodial parent from the burden of obtaining a new modification order when the obligated parent is released. Id.

In the present case, the trial court set Clark's child support obligation at $53 per week. Clark receives less than $21 per month at his prison job assignment. Leaving this support order undisturbed would likely burden Clark with a high arrearage upon his release from prison. Additionally, denial of Clark's petition would thwart the goal of having child support obligations reflect the present earning capacity of parents. The record is silent as to whether Clark has other sources of income and assets to underwrite his support obligation. Upon remand, the trial court should consider whether other income sources exist before making its determination.

6

## Conclusion

For the reasons discussed <u>supra</u>, we vacate the trial court's denial of Clark's Petition for Abatement and/or Modification of Child Support, and summarily affirm the Court of Appeals as to all other issues not addressed in this opinion.  App. R. 58(A)(2).  We remand this case to the trial court for further proceedings in accordance with this opinion.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.