Jonathon D. DOUGLAS, Appellant,

v.

STATE of Indiana and INDIANA FAMI-
LY & SOCIAL SERVICES ADMINIS-
TRATION, as Assignee of the Support
Rights of Mechelle (Allen) McCrory,
Appellee.

No. 40A01–1009–DR–466.

Court of Appeals of Indiana.

Oct. 12, 2011.

R. Patrick Magrath, Alcorn Goering & Sage, LLP, Madison, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

Jonathon D. Douglas ("Douglas") appeals from the trial court's denial of his petition to modify his child support obligation and raises one issue, which we restate as whether the trial court erred in concluding that Douglas was not entitled to a reduction of his child support obligation because the reduction in his income upon which he based his petition for modification resulted from his incarceration for Class C felony nonsupport of a dependent. We reverse and remand for proceedings consistent with this opinion.

### Facts and Procedural History

Douglas is subject to support orders pertaining to three of his dependent children from two previous marriages. Douglas is also father to two children with his current wife. Douglas failed to pay support as ordered and in 2004, he was charged with Class C felony nonsupport of a dependent. Douglas pleaded guilty and was sentenced to eight years with seven years suspended to probation. In August 2008, Douglas's probation was revoked due to his continued failure to pay child support as ordered, and he was ordered to serve his previously suspended sentence in the Indiana Department of Correction.

Douglas subsequently filed a petition to modify his child support obligations asserting that he was entitled to a reduction in those obligations due to the decline in his income caused by his incarceration. After a hearing at which Douglas did not appear due to his incarceration, the trial court entered an order denying Douglas's petition. The order was accompanied by the following relevant findings of fact and conclusions of law:

2. Mr. Douglas relies upon the holding in *Lambert v. Lambert*, 861 N.E.2d 1176 (Ind.2007) for his request to modify during the terms of his incarceration. The most recent decision on this support issue is found in *Clark v. Clark*, 902 N.E.2d 813 (Ind.2009). However, the facts of the case at bar are significantly different from the facts in *Lambert* and *Clark*. In particular, *Clark* was incarcerated for attempted murder.[1] Mr.

---

1. It is unclear from the record how the trial court reached this conclusion, as the reason for Clark's incarceration was not specified in

Douglas is incarcerated due to a conviction for felony non-support of the same child he now seeks a support modification for. . . .

3. In holding that incarceration *"may serve as a changed circumstance so substantial and continuing as to make the terms of the support order unreasonable pursuant to IND. CODE § 31–16–8–1,"* *Clark* at 817, the Supreme Court could not have contemplated facts such as those in the case at bar.

4. Here, the Jennings County IV–D Office and before them, [Douglas's ex-wife,] exhausted every avenue available to them in order to encourage Mr. Douglas to pay his support. There were multiple Petitions for Contempt filed and multiple Income Withholding Orders. When all else failed, criminal charges were filed. . . .

5. On April 27, 2004, [Douglas] plead guilty to Non–Support of a Dependent, a Class "C" felony and on May 12, 2004, [Douglas] was sentenced to [eight years with one year executed in the Department of Correction and seven years suspended to probation]. On the date criminal charges were filed (February 11, 2004), [Douglas's] arrearage was Eighteen Thousand Five Hundred and 39/100 Dollars ($18,500.39). Even then, [Douglas] failed to pay his child support as ordered, and his probation was revoked.

6. Now, [Douglas] asks this Court to modify his child support obligation. Granting such a request would lead to an outcome that defies logic. Such an order would allow a non-custodial parent with a child support obligation to ignore the Court's civil orders and his duty to his child, and in the event of a criminal non-support conviction, have his child support obligation modified or abated during any period of incarceration.[1] [Footnote text: In essence, Mr. Douglas is asking this Court to lower or abate his child support obligation for the child he is in prison for not supporting in the first place.]

7. The holding in *Clark* does not emphatically require trial courts to modify support during periods of incarceration. Rather, the holding that incarceration "may" be a change in circumstances so substantial as to make terms of a child support order unreasonable left to trial courts discretion in fact situations like this case at hand. While it is unlikely that an incarcerated non-custodial parent with a child support obligation would be found in contempt of court for not paying his child support during his time of incarceration, an arrearage should continue to accrue during that time.

8. This Court finds incarceration as a result of a conviction for felony non-support of a dependent child is not a circumstance so substantial as to make the terms of this child support order unreasonable. Therefore, the Court DENIES [Douglas's] Verified Petition to Lower Child Support Obligation filed August 17, 2009.

Appellant's App. pp. 31–32. Douglas now appeals.[2]

## Standard of Review

 ▋ The trial court issued findings of fact and conclusions of law, apparently *sua sponte.* In such situations, our standard of review is well settled:

> [W]hen reviewing the specific findings and conclusions thereon, we must first determine whether the record supports

either this court's opinion or that of our supreme court.

2. We heard oral argument on this cause on July 6, 2011, at the Indiana Supreme Court Courtroom in Indianapolis, Indiana. We thank counsel for their advocacy.

the factual findings, and then whether the findings support the judgment. On appeal, we will not set aside the findings or judgment unless they are clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. We therefore consider only the evidence favorable to the judgment and the reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility. A judgment is clearly erroneous when there is no evidence to support the findings, the findings do not support the judgment, or the trial court applies the wrong legal standard to properly found facts.

However, because the trial court entered findings and conclusions *sua sponte*, the specific findings control only as to the issues they cover, and a general judgment standard applies to those issues on which the trial court has not found. We may affirm a general judgment on any theory supported by the evidence of record. We review questions of law *de novo*.

*M.S. v. C.S.*, 938 N.E.2d 278, 281–82 (Ind. Ct.App.2010) (internal quotations and citations omitted).

■ Additionally, we review a trial court's denial of a petition to modify child support for an abuse of discretion. *In re Paternity of E.C.*, 896 N.E.2d 923, 924 (Ind.Ct.App.2008). Thus, we will reverse the trial court's decision only where it is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* at 924–25.

## Discussion and Decision

■ Douglas argues that the trial court's refusal to reduce his child support obligation based on the reduction of his income due to his incarceration for Class C felony nonsupport was an abuse of discretion. Douglas does not challenge the trial court's findings of fact; rather, he contends that the judgment was based on erroneous legal conclusions. As noted above, we do not defer to a trial court's legal conclusions and will reverse if the court relied on an incorrect legal standard. *M.S.*, 938 N.E.2d at 282.

Child support orders may be modified based upon the following statutory guidelines:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Ind.Code § 31–16–8–1(b) (2008).

■ Here, Douglas argues that the reduction in his income caused by his incarceration amounts to a substantial change in circumstances entitling him to a reduction in his child support obligation under the child support modification statute. Under the current state of the law, we are constrained to agree.

Although not specifically addressing the issue of a child support obligor incarcerated for failure to pay support as ordered, our supreme court has held that incarceration, as a general matter, may serve as a changed circumstance so substantial and continuing as to make the terms of an existing support order unreasonable in *Clark v. Clark*, 902 N.E.2d 813, 817 (Ind. 2009). In reaching this holding, the court relied heavily on its previous decision in

*Lambert v. Lambert,* 861 N.E.2d 1176 (Ind.2007).

In *Lambert,* the court addressed whether pre-incarceration income should be imputed to an incarcerated parent for the purposes of calculating an initial support order. After reviewing approaches taken in other states, the court held that "[w]hile our Child Support Guidelines obligate every parent to provide some support even when they have no apparent present income, it was error to set support based on employment income that plainly would not be there during incarceration." *Id.* at 1176. The court went on to conclude that "in determining support orders, courts should not impute potential income to an imprisoned parent based on pre-incarceration wages or other employment-related income, but should rather calculate support based on the actual income and assets available to the parent." *Id.* at 1177.

The *Lambert* court reasoned that while the Child Support Guidelines allow trial courts to impute potential income to parents who are voluntarily unemployed or underemployed without just cause, *see* Ind. Child Support Guideline 3(A)(1), "the concept of 'voluntary unemployment or underemployment' as used in the Guidelines requires *both* the ability to earn more income *and* the conscious choice on the part of a parent to reduce income." *Lambert,* 861 N.E.2d at 1180 (emphasis added) (citing Ind. Child Supp. G. 3(A) cmt. 2(c) ("Potential income may be determined if a parent has no income, or only means-tested income, and is capable of earning income or capable of earning more."); Ind. Child Supp. G. 3(A) cmt. 2(c)(2) (providing that potential income shall be included when calculating a parent's gross income "[w]hen a parent has some history of working and is capable of entering the work force, but without just cause voluntarily fails or refuses to work or to be employed in a capacity in keeping with his or her capabilities[.]")).

In the *Lambert* court's view, incarceration, which in Lambert's case was for crimes unrelated to nonsupport of a dependent, did not amount to voluntary unemployment for the purposes of the Guidelines for two reasons. First, incarcerated parents are typically incapable of making enough money to satisfy support obligations calculated based on imputed potential income; thus, they have no actual ability to earn more. *See Lambert,* 861 N.E.2d at 1180. Second, although criminal activity undoubtedly reflects a voluntary choice, it is "not quite the same" as voluntarily refusing to work because "[t]he choice to commit a crime is so far removed from the decision to avoid child support obligations that it is inappropriate to consider them as identical." *Id.*

Additionally, the court reasoned that its holding was "supported by the overarching policy goal of all family court matters involving children: protecting the best interests of those children." *Id.* The court emphasized that the child support system is not meant to serve a punitive purpose; rather, it is an economic system "designed to measure the relative contribution each parent should make—and is capable of making—to share fairly the economic burdens of child rearing." *Id.* The court reasoned that "imposing impossibly high support payments on incarcerated parents acts like a punitive measure, and does an injustice to the best interests of the child by ignoring factors that can, and frequently do, severely damage the parent-child relationship." *Id.* Specifically, the court cited sociological evidence supporting the conclusion that the accumulation of large support arrearages during periods of incarceration results in greater failure of noncustodial parents to comply with their child support obligations, making it "statis-

tically more likely that the child will be deprived of adequate support over the long term." *Id.* at 1181. Additionally, unsustainable support orders create "a barrier to successful re-entry into society because they have a tendency to disrupt family reunification, parent-child contact, and the employment patterns of ex-prisoners." *Id.*

The *Clark* court relied on *Lambert* to conclude that "[p]roscribing the consideration of incarceration as a substantial change in circumstances justifying the modification of a child support order is not in the best interest of children." 902 N.E.2d at 817. The court reasoned that

> [w]hen released, most obligated parents face the twin barriers of large arrearages and difficulty finding employment. Such a situation makes it more likely that the newly-released obligated parent will face jail time as a result of nonpayment of child support or participate in the underground economy—once again straining family relationships, if not jeopardizing public safety. *Lambert* recognized the realities of incarceration for families, and is equally applicable to modifications of child support orders.

*Id.* Thus, the court held that "in petitions to modify a support order, incarceration may serve as a changed circumstance so substantial and continuing as to make the terms of the support order unreasonable." *Id.*

Although the *Clark* court concluded that "incarceration *may* serve as a changed circumstance so substantial and continuing as to make the terms of the support order unreasonable[,]" it went on to hold that "it follows that *a support obligation should be set based on the parent's actual earnings while incarcerated* (and other assets available to the incarcerated person)." 902 N.E.2d at 817 (emphasis added). The court went on to note that in light of Clark's income of less than twenty-one dollars per month from his prison job assign-

ment, a continued child support obligation of fifty-three dollars per week "would likely burden Clark with a high arrearage upon his release from prison" and "would thwart the goal of having child support obligations reflect the present earning capacity of parents." *Id.* Accordingly, the court vacated the trial court's denial of Clark's petition to modify and remanded to the trial court with instructions to consider whether Clark had other sources of income or assets available to underwrite his support obligation.

■ For all of these reasons, we interpret *Lambert* and *Clark* together to mean that, as a general matter, incarceration *shall* constitute a change in circumstances so substantial and continuing as to make the terms of an existing order unreasonable *unless* the obligor has income or assets available to underwrite his or her support obligation. Indeed, the State does not dispute this point or argue that it is generally within the trial court's discretion to deny incarcerated parents' petitions to modify, regardless of whether they have sufficient income or assets available to satisfy their obligations.

But our conclusion does not fully dispose of the issue presented here. The trial court concluded that our supreme court could not have intended its holding in *Clark* to apply to child support obligors incarcerated for crimes of nonsupport because such an outcome would "def[y] logic" by "allow[ing] a non-custodial parent with a child support obligation to ignore the Court's civil orders and his duty to his child, and in the event of a criminal nonsupport conviction, have his child support obligation modified or abated during any period of incarceration." Appellant's App. p. 31.

Similarly, the State argues that *Lambert* and *Clark* are distinguishable from the case as hand because neither of those

cases dealt specifically with a child support obligor who was incarcerated for the crime of nonsupport of a dependent. The State argues that we should carve out an exception to the general rules set forth in those cases and hold that an incarcerated child support obligor is not entitled to a reduction in his or her child support obligation when he or she is incarcerated for failure to pay support as ordered. Douglas argues that *Lambert* and *Clark* are applicable regardless of the type of crime committed and that the logical underpinnings of those cases counsel against creating the exception urged by the State. While we share the frustration of the trial court and the frustration of greater, responsible, civil society with parents like Douglas, we are constrained to agree with Douglas's reading of the applicable law, and we specifically decline to carve out an exception to our supreme court's holdings in *Lambert* and *Clark.*

The State essentially contends that Douglas is not entitled to modification because incarceration for a crime of nonsupport is a form of voluntary unemployment. The State acknowledges our supreme court's reasoning from the *Lambert* case that the choice to commit a crime is "not quite the same" as voluntarily refusing to work because "the choice to commit a crime is so far removed from the decision to avoid child support obligations that it is inappropriate to consider them as identical," 861 N.E.2d at 1180, but argues that when a child support obligor is incarcerated for a crime of nonsupport, the choice to commit a crime and the decision to avoid

child support obligations are one and the same. Indeed, if presented with the issue, it appears that many other states would arrive at this result.[3]

But even if we assume that the State is correct in its argument that incarceration for nonsupport amounts to a conscious decision to reduce income, the *Lambert* court held that the concept of voluntary unemployment, so as to justify the imputation of potential income, "requires *both* the ability to earn more income, *and* the conscious choice on the part of a parent to reduce income." 861 N.E.2d at 1180 (emphasis added); *see also Clark,* 902 N.E.2d at 817 (holding that an incarcerated parent's child support obligation should be based on the parent's actual earnings while incarcerated, together with any available assets). The majority of incarcerated child support obligors will be unable to continue paying support at pre-incarceration levels. This is equally true regardless of the crime for which the obligor has been imprisoned. We therefore conclude that incarceration for nonsupport does not amount to voluntary unemployment for the purposes of the Guidelines.

■ The State's argument and our society's common frustration with parents like Douglas are both born of a central fact: Douglas's choice to commit the crime of nonsupport is *not* "so far removed from the decision to avoid child support obligations that it is inappropriate to consider them as identical." *Lambert,* 861 N.E.2d at 1180. Even so, the General Assembly has established the range of possible pun-

---

**3.** *See, e.g. Nab v. Nab,* 114 Idaho 512, 757 P.2d 1231, 1238 (Idaho Ct.App.1988) ("Where a noncustodial parent is imprisoned for a crime *other than nonsupport (or for civil contempt for failure to pay the same)* we believe that the better rule should be that the parent is not liable for such payments while incarcerated unless it is affirmatively shown that he or she has income or assets to make such pay-

ments." (emphasis added)); *In re Marriage of Blickenstaff,* 71 Wash.App. 489, 859 P.2d 646, 650–51 (1993) ("We hold, therefore, that an incarcerated parent is not 'voluntarily unemployed' within the meaning of the child support statutes *unless the parent was imprisoned for a crime of nonsupport or for civil contempt for failure to pay support.*" (emphasis added)).

ishments for the crime of nonsupport of a dependent child. *See* Ind.Code § 35–50–2–6 (2004) (providing that "[a] person who commits a Class C felony shall be imprisoned for a fixed term between two (2) and eight (8) years"). The child support system is not meant to serve the same punitive purposes as our criminal statutes. *Lambert*, 861 N.E.2d at 1180. Rather, child support is an economic system "designed to measure the relative contribution each parent should make—and is capable of making—to share fairly the economic burdens of child rearing." *Id.* And even where a parent is incarcerated for failing to support his or her child, the fact remains that he or she will typically be incapable of paying child support at pre-incarceration levels during the period of incarceration.

Moreover, our supreme court's reasoning that reduction of child support obligations during periods of incarceration serves the best interest of the child appears to apply regardless of the crime that led to the obligor's incarceration. In *Lambert*, the court cited sociological evidence supporting the conclusion that the accumulation of large support arrearages during periods of incarceration results in greater failure of noncustodial parents to comply with their child support obligations, making it "statistically more likely that the child will be deprived of adequate support over the long term." 861 N.E.2d at 1181. In response, the State argues that individuals incarcerated for nonsupport have al-ready failed to provide adequate support and that no greater deprivation of the child can occur. We disagree.

In *Clark*, the court reasoned that upon release from prison, "most obligated parents face the twin barriers of large arrearages and difficulty finding employment." 902 N.E.2d at 817. The court concluded that these problems make it more likely that the parent will be re-incarcerated for failure to pay child support and that the parent will seek employment in the underground economy. *Id.* And the *Lambert* court noted that the accumulation of arrearages during periods of incarceration tend to disrupt family reunification and parent-child contact. 861 N.E.2d at 1181. We fail to see how these problems are any less pronounced when the parent has been incarcerated for nonsupport rather than for any other crime.[4] But even assuming that these concerns are somehow less important in the case of a child support obligor incarcerated for nonsupport, our supreme court's decisions in *Clark* and *Lambert* require that child support obligations be based on parents' actual, present earning capacity, and incarcerated parents will typically be unable to pay support at pre-incarceration levels regardless of the nature of their crimes.

The State also directs our attention to several decisions from our sister states wherein approaches similar to those taken by our supreme court in *Lambert* and *Clark* were taken. In articulating a general rule against imposing unsustainable sup-

---

**4.** The State argues that we should not be concerned with the effect that continuing Douglas's child support obligation at pre-incarceration levels will have on his relationship with the children because "he apparently has no contact with his now-adult child." Appellee's Br. at 11. There is evidence in the record to support the conclusion that for several years prior to his incarceration, Douglas had no contact with the two youngest children he is incarcerated for failing to support.

Tr. p. 11. However, the State has not directed our attention to any evidence supporting its contention that Douglas has had no contact with his oldest child, and we have not discovered any such evidence in our review of the record. And even assuming that Douglas has not maintained relationships with his children in the past, his compounding support arrearage may make it more likely that Douglas's failure in this regard will continue into the future.

port orders on incarcerated parents, these courts expressed that the rule would not apply to parents incarcerated for failure to pay support as ordered. *See, e.g.,* cases cited *supra* note 3. These cases are, of course, not controlling authority in this court, and our supreme court did not cite them in *Clark* or *Lambert.* Nor did these cases directly address the issue presented here; in each, the obligor seeking modification was incarcerated for reasons other than nonsupport.[5] And none of these out-of-state cases addressed the undesirable social results flowing from the continuation of high support orders throughout periods of incarceration, a phenomenon our supreme court discussed at length in both *Lambert* and *Clark.*

Finally, when all is said and done, it is the province of our supreme court to consider exceptions to its general, administrative rules governing child support. We therefore decline to create an exception to the rules set forth in *Lambert* and *Clark* and hold that the trial court erred when it concluded that incarceration for nonsupport of a dependent child cannot amount to a change in circumstances so substantial and continuing as to make the terms of an existing child support order unreasonable.

 Accordingly, we reverse and remand for further proceedings. On remand, the trial court should consider whether Clark has assets or other sources of income available to underwrite his support obligation.[6] Additionally, we note that the court may order Douglas's sup-

port obligation to automatically revert to the pre-incarceration level upon his release from prison. *See Clark,* 902 N.E.2d at 817 (citing *Lambert,* 861 N.E.2d at 1182).

Reversed and remanded for proceedings consistent with this opinion.

KIRSCH, J., and VAIDIK, J., concur.

---

5. Neither party has directed our attention to a case from Indiana or any other jurisdiction directly addressing the issue presented here.

6. Douglas contends that he already established that he has no assets or income available to underwrite his support obligation during his incarceration by submitting a financial declaration form to the trial court with his petition to modify his support obligation. However, the copy of the form included in the

Appellant's Appendix is illegible. Moreover, because the trial court concluded as a general matter that Douglas could not obtain a modification of his support obligation because of his incarceration for nonsupport of a dependent child, it made no findings regarding Douglas's access to additional sources of income. It is for the trial court to determine whether the information contained in the financial declaration form is credible.