## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 29 2017, 8:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Murielle S. Bright
North Vernon, Indiana

ATTORNEY FOR APPELLEE

Joseph A. Colussi
Colussi Law Office
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joshua Abbott,<br>*Appellant-Respondent,*<br><br>v.<br><br>Trinady Abbott,<br>*Appellee-Petitioner.* | June 29, 2017<br><br>Court of Appeals Case No.<br>39A01-1610-DR-2508<br><br>Appeal from the Jefferson Circuit Court<br><br>The Honorable Darrell M. Auxier, Judge<br><br>Trial Court Cause No.<br>39C01-1101-DR-20 |

**Mathias, Judge.**

[1]     Joshua Abbott ("Father") appeals the order of the Jefferson Circuit Court denying his motion to retroactively abate his child support obligation.

[2]     We affirm.

# Facts and Procedural History

[3]  Father married Trinaday Abbott ("Mother") in September 2006, and the parties had one child. The marriage was dissolved in April 2011. Pursuant to the mediated settlement agreement which was incorporated into the dissolution decree, Father was ordered to pay $90 per week in child support to Mother.

[4]  On February 2, 2014, Father was arrested and subsequently charged with two counts of Class B felony criminal confinement, two counts of Class C felony intimidation, Class D felony domestic battery, Class D felony pointing a firearm, Class D felony criminal confinement, and two counts of Class A misdemeanor domestic battery. On February 26, 2014, Father pleaded guilty to Class C felony criminal confinement, Class C felony intimidation, and Class A misdemeanor domestic battery. On March 14, 2014, Father was sentenced to concurrent terms of eight years on both Class C felony convictions and a concurrent term of one year on the Class A misdemeanor conviction.

[5]  Father filed a petition to modify his sentence in June 2014, which the trial court denied. Father filed a second petition to modify his sentence on March 17, 2016. This time, the court granted the petition, and Father was ordered to serve the 850 days remaining on his sentence in community corrections, beginning August 6, 2016. Thus, as a result of his arrest and convictions, Father was incarcerated from February 2, 2014 until August 6, 2016.

[6] According to Father, his counsel in the criminal case told him that "his child support obligation in the case at bar would abate while he was incarcerated."[1] Appellant's Br. at 4. However, this advice was incorrect, and Father did not file any motion seeking to reduce or abate his child support obligation while he was incarcerated. As a result, when Father was released from incarceration, he was in arrears on his child support in the amount of approximately $11,000.

[7] On August 22, 2016, Father filed a motion to retroactively abate his child support obligation from February 2, 2014 to August 6, 2016, the dates during which he was incarcerated. The trial court denied the motion the following day, in an order that provided in relevant part, "A trial court only has the discretion to make a modification of child support due to incarceration effective as of a date no earlier than the date of the petition to modify." Appellant's App. p. 14 (citing *Becker v. Becker*, 902 N.E.2d 818 (Ind. 2009)).

[8] On September 8, 2016, Father filed a petition to modify his child support. Howver, he did not give up on his effort to have his child support retroactively modified, and on September 23, 2016, he filed a motion to correct error claiming that the trial court had erred in denying his motion to retroactively abate his child support obligation. Father claimed in his motion to correct error that the trial court:

---

[1] As noted by Mother, Father was represented in the criminal case by the same counsel that represents him on appeal.

does have the discretion to retroactively modify [Father]'s child support when the opinions of *Becker v. Becker*, 902 N.E.2d 818 (Ind. 2009) and *Douglas v. Douglas*, 954 N.E.2d 1090 (Ind. Ct. App. 2011) (*transfer*[] *denied*) are considered together and not independently of one another and also considers the Indiana Court of Appeal's [sic] clear public policy rational[e] in *Douglas*.

Appellant's App. p. 19 (italics added). The trial court issued an order denying Father's motion to correct error the same day that it was filed, noting that "the Court is not aware of, nor does [Father] cite the Court to, any case which overrides or modifies the holding in *Becker*." *Id*. at 26. The trial court also indicated its belief that our supreme court had granted transfer in *Douglas*.

[9] On October 3, 2016, Father filed a motion to reconsider, correctly noting that although our supreme court had initially granted transfer in *Douglas*, it later vacated its transfer order and denied transfer, thereby reinstating this court's opinion in that case. *See Douglas v. State*, 969 N.E.2d 1006 (Ind. 2012) (vacating transfer order and denying transfer).[2] The trial court denied the motion to reconsider the following day, concluding that this court's opinion in *Douglas* did not alter the rule that "a support order may not be retroactively modified prior to the date of the filing of a petition to modify." Appellant's App. p. 31.

---

[2] This confusion could stem from the fact that, in Westlaw, our opinion in *Douglas* is marked with a "red flag," indicating that the case is no longer valid precedent, and also contains a note stating, "Transfer Granted, Opinion Vacated, IN RAP 58(A)." As explained above, our supreme court initially granted transfer in *Douglas*, but later vacated its transfer order and denied transfer. Accordingly, *Douglas* is still valid precedent.

On October 31, 2016, Father filed a notice of appeal.[3]

# Discussion and Decision

Father argues that the trial court should have granted his motion to retroactively abate his child support obligation to the date he was incarcerated, i.e., February 2, 2014. The origin of Father's argument can be traced to the opinion of our supreme court in *Lambert v. Lambert*, 861 N.E.2d 1176 (Ind. 2007).

In *Lambert*, our supreme court held that, when determining the initial order of child support, an incarcerated parent's pre-incarceration income should not be imputed to the incarcerated parent. *Id*. at 1177. Although the Indiana Child Support Guidelines require every parent to provide some support, the *Lambert* court held that it was improper to set an incarcerated parent's support obligation based on pre-incarceration employment income that "plainly would

---

[3] On December 28, 2016, Mother filed a motion to dismiss Father's appeal, claiming that Father's motion to correct error was untimely and that his notice of appeal was therefore also untimely. The motions panel of this court denied Mother's motion to dismiss on January 20, 2017. Mother filed a motion to reconsider on January 23, 2017, which our motions panel denied two days later.

In her appellee's brief, Mother repeats her argument that Father's notice of appeal was untimely and that his appeal should therefore be dismissed. Father argues in his reply brief that the ruling of our motions panel on this matter was final. However, it is well settled that a writing panel may reconsider a ruling by the motions panel. *Simon v. Simon*, 957 N.E.2d 980, 987 (Ind. Ct. App. 2011). Although we are reluctant to overrule orders decided by the motions panel, we have the inherent authority to reconsider any decision while an appeal remains *in fieri*. *Id*.

Nevertheless, we decline to reconsider the ruling of our motions panel in this case. The untimely filing of a notice of appeal is not a jurisdictional defect. *In re Adoption of O.R.*, 16 N.E.3d 965, 971 (Ind. 2014). Even according to Mother, Father's motion to correct error was at most one day late. Nor did Mother object to the lateness of Father's motion to correct error. Given our preference to decide issues on their merits, *Kelly v. Levandoski*, 825 N.E.2d 850, 856 (Ind. Ct. App. 2005), we choose to address Father's appellate argument on the merits.

not be there during incarceration." *Id*. at 1176. Instead, trial courts should "calculate support based on the actual income and assets available to the parent" during incarceration. *Id*. at 1177.

[13] However, the *Lambert* court specifically rejected the idea that child support should be completely suspended while a parent is incarcerated, concluding that

> [a]dopting a system that considers incarceration an absolute justification for the reduction or suspension of child support appears inconsistent with the policy embedded in Indiana's statutes. . . . [W]e cannot imagine that the legislature intended for incarcerated parents to be granted a full reprieve from their child support obligations while their children are minors.

*Id.* at 1179.

[14] The *Lambert* court also held that an incarcerated parent should not be considered "voluntarily" unemployed or underemployed under the Child Support Guidelines. *Id*. at 1180. Although criminal activity reflects a "voluntary choice," it is "not quite the same" as voluntarily refusing to work because "[t]he choice to commit a crime is so far removed from the decision to avoid child support obligations that it is inappropriate to consider them as identical." *Id*. "[I]mposing impossibly high support payments on incarcerated parents acts like a punitive measure, and does an injustice to the best interests of the child by ignoring factors that can, and frequently do, severely damage the parent-child

relationship."[4] *Id*. However, the rule set forth in *Lambert* only "counsels against imputing pre-incarceration wages, salaries, commissions, or other employment income to the individual. A court may, obviously, still consider other sources of income when calculating support payments." *Id*. at 1182.

[15]     *Lambert* dealt only with the *initial* setting of the incarcerated parent's child support obligation. In *Clark v. Clark*, 902 N.E.2d 813, 817 (Ind. 2009), our supreme court relied on the reasoning of *Lambert* to hold that incarceration may serve as a changed circumstance so substantial and continuing as to make the terms of an *existing* support order unreasonable, thereby justifying modification of the support order. As in *Lambert,* the *Clark* court held that "a support obligation should be set based on the obligated parent's actual earnings while incarcerated (and other assets available to the incarcerated person)." *Id*.

[16]     On the same day that it decided *Clark*, our supreme court also issued its opinion in *Becker v. Becker*, 902 N.E.2d 818 (Ind. 2009). In *Becker*, an incarcerated father petitioned to have his child support obligation reduced on grounds that he was incarcerated. The trial court granted the petition retroactive to the date of the *Lambert* decision. The father appealed, contending that the trial court should have retroactively reduced his child support obligation, not just to the date of

---

[4] The *Lambert* court cited sociological evidence supporting the conclusion that the accumulation of large support arrearages during periods of incarceration results in greater failure of noncustodial parents to comply with their child support obligations, making it "statistically more likely that the child will be deprived of adequate support over the long term." *Id*. at 1181. The court further noted that unsustainable support orders create "a barrier to successful re-entry into society because they have a tendency to disrupt family reunification, parent-child contact, and the employment patterns of ex-prisoners." *Id*.

*Lambert*, but to the date of the divorce decree, which was entered while father was incarcerated. On transfer to our supreme court,[5] the court noted the well-established rule that, although a trial court has discretion to make a modification of child support relate back to the date the petition to modify was filed, retroactive modification of child support payments may not generally relate back to a date earlier than the filing of the petition to modify. *Becker,* 902 N.E.2d. at 820 (citing *Donegan v. Donegan*, 605 N.E.2d 132, 133 n.1 (Ind. 1992); *Quinn v. Threlkel*, 858 N.E.2d 665, 674 (Ind. Ct. App. 2006)). The court further noted the long-standing rule that "'after support obligations have accrued, a court may not retroactively reduce or eliminate such obligations.'" *Id.* (quoting *Whited v. Whited*, 859 N.E.2d 657, 661 (Ind. 2007)). Thus, the modification of a support obligation may only relate back to the date the petition to modify was filed, and not an earlier date, subject to two exceptions, which were not applicable in *Becker* or in the present case.[6] *Id.* The *Becker* court ultimately concluded that "[n]othing in *Lambert* or *Clark* suggests a contrary rule for modifications due to incarceration," and reaffirmed that "[a] trial court only has the discretion to make a modification of child support due to incarceration

---

[5] A panel of this court had held that the reduction of the father's support obligation could not be retroactive to any date before the date on which he filed his petition for relief. *Becker v. Becker*, 891 N.E.2d 1114, 1115 (Ind. Ct. App. 2008), *trans. granted, opinion vacated.*

[6] These two exceptions are "(1) when the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the decree; or (2) the obligated parent takes the child into the obligated parent's home and assumes custody, provides necessities, and exercises parental control for a period of time [such] that a permanent change of custody is exercised." *Id.* at 820 n.4 (citing *Whited*, 859 N.E.2d at 662).

effective as of a date no earlier than the date of the petition to modify. *Id*. at 820-21.

[17]   Here, Father argues that the trial court should have retroactively modified his child support obligation to the date of his incarceration, citing the opinion of this court in *Douglas v. Indiana Family & Social Services. Administration*, 954 N.E.2d 1090 (Ind. Ct. App. 2011), *trans. denied*. However, in *Douglas*, this court simply held that the rule in *Lambert* and *Clark* applied even to a parent who was incarcerated for felony nonsupport of a dependent child. *Id*. at 1098. Father argues that the public policy rationale we noted in *Douglas* "outweighs the date of petition holding outlined in *Becker*, especially given that Appellant filed his Motion to Retroactively Abate Child Support only seventeen (17) days after his release from incarceration." Appellant's Br. at 9. Father further argues that he should not be "punished for not filing his Motion to Retroactively Abate Child Support at an earlier date during his incarceration." *Id*.

[18]   However, the policy rationale we noted in *Douglas* was simply that set forth by our supreme court in *Lambert* and later in *Clark*. Our opinion in *Douglas* simply applied these holdings to a parent who was incarcerated for nonsupport of a child. Nothing in our *Douglas* opinion suggests that it is in conflict with *Becker*.[7] The bottom line is that Father's argument that his child support obligation should be retroactively modified or abated to the date of his incarceration is

---

[7] Even if it were, *Becker* would control. As in intermediate appellate court, "we are bound by the decisions of our supreme court." *Dragon v. State*, 774 N.E.2d 103, 107 (Ind. Ct. App. 2002) (citations omitted), *trans. denied*.

clearly incompatible with the controlling opinion of our supreme court in *Becker*. Nothing in our opinion in *Douglas* suggests otherwise. If Father wished to have his child support obligation reduced due to his incarceration, he should have filed a petition to modify his child support while he was incarcerated. For whatever reason, Father did not file a petition to modify his child support until well after his release from incarceration, and under *Becker*, the trial court had no authority to retroactively modify Father's child support obligation to any date earlier than the date he filed his petition to modify. 902 N.E.2d at 820–21.

## Conclusion

[19] The trial court did not err in denying Father's motion to retroactively modify his child support obligation to the date of his incarceration. Our supreme court has rejected this very argument, and nothing in our more recent case law purports to modify or alter this binding precedent. We therefore affirm the judgment of the trial court.[8]

[20] Affirmed.

Kirsch, J., and Altice, J., concur.

---

[8] In her appellee's brief, Mother requests that we award her appellate attorney fees. Under Indiana Appellate Rule 66(E), we may, in our discretion, order one party to pay another party's appellate attorney fees if the appeal "is frivolous or in bad faith." *Blackman v. Gholson*, 46 N.E.3d 975, 981 (Ind. Ct. App. 2015), *reh'g denied*. We will award appellate attorney fees only if the appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Id*. We use extreme restraint in deciding whether to award appellate attorney fees because of the potential chilling effect upon the exercise of the right to appeal. *Id*. Under this rather demanding standard, we cannot say that Father's appeal is so devoid of merit as to justify an award of appellate attorney fees.