**Mark H. TAYLOR, Appellant–Respondent,**

v.

**Megan Alyce BUEHLER, Appellee–Petitioner.**

No. 64A03-9712-JV-415.

Court of Appeals of Indiana.

May 12, 1998.

the alternative, to promote the abuse of appropriate methods and procedures.

Debra Lynch Dubovich, Levy & Dubovich, Highland, for Appellant–Respondent.

## OPINION

SULLIVAN, Judge.

Appellant, Mark H. Taylor (Taylor), appeals the trial court's decision modifying visitation.

We affirm in part and remand in part.

Taylor asserts three issues upon appeal, which we restate as follows:

(1) Whether the trial court erred in entering its modification order in "opinion form", rather than separately through specific findings of fact and conclusions of law as requested.

(2) Whether the decision modifying visitation was supported by the evidence.

(3) Whether the trial court erred in not finding M.T.'s mother in contempt for violating the court-ordered visitation schedule.[1]

■ Although "opinion form" orders may not be the most ideal format for issuing requested Findings of Fact, no error was committed because the specific facts leading to the trial court's determination are discernible without difficulty. Also, because the court's authority to modify Taylor's visitation was controlled by I.C. 31–6–6.1–12, *repealed by* P.L. 1–1997 § 157,[2] which allowed "visitation" modification "whenever modification would serve the "best interests of the child", sufficient evidence supported the modification. Finally, our affirmance of the trial court's visitation modification leaves Taylor without any reasonable remedy for his previous contempt motions, regardless of their merit.

In a petition filed November 19, 1990, Taylor stipulated that he was the father of M.T., who was born out-of-wedlock to Megan Buehler (Buehler) on March 28, 1990. The trial court, on December 2, 1992, ordered that Taylor was entitled to weekly visitation with M.T. from Thursday at 6:00 p.m. until Sunday at 12:00 noon. On May 19, 1995, Buehler filed a petition for modification of visitation, citing as a substantial change of circumstances M.T.'s upcoming attendance at school beginning in August 1995. On May 19, 1995, Buehler filed a motion for change of judge, and on June 2, 1995, Judge Bradford was appointed as special judge.

■ Beginning August 24, 1995, Buehler refused to permit visitation with M.T. on Thursday evenings. Taylor filed two separate contempt petitions citing Buehler's refusal to allow visitation on August 24, 1995, and August 31, 1995. On December 1, 1997,

the trial court held a hearing to determine the issues of visitation modification and contempt.[3] Taylor requested that the court issue Specific Findings of Fact and Conclusions of Law pursuant to Ind. Trial Rule 52(A). On October 15, 1997, the trial court issued its decision in "opinion form". In its Order on Petition to Modify, the trial court decided to modify the previous visitation schedule and award Taylor bi-weekly visitation, beginning Friday at 6:00 p.m. The court's order did not address Taylor's contempt allegations.

## "OPINION FORM" FINDINGS OF FACT

■ Taylor contends that the court erred by issuing requested Findings of Fact in "opinion form." On May 13, 1996, Taylor filed a timely Motion for Specific Findings of Fact and Conclusions of Law. On October 15, 1997, the trial court issued its Order on Petition to Modify, which was written in opinion form and consisted of nine paragraphs.

In its Order on Petition to Modify, the trial court found that:

"[M.T.] has begun attending school, [and] the present visitation from 6:00 p.m. on Thursday to noon on Sunday is disruptive to her school scheduling . . . . that interruption of week-day routine can only be detrimental to [M.T.]. Further, it is not fair to [M.T.] or to her mother to have every week-end spent away from her mother." Record at 280.

■ Under T.R. 52, a trial judge is not free to ignore a timely, written request for special findings. *Carmichael v. Siegel* (1996) Ind., 670 N.E.2d 890, 891. However, "[t]he purpose of special findings is to provide the parties and the reviewing courts with the theory on which the judge decided the case in order that the right of review for error may be effectively preserved." *McGinley–Ellis v. Ellis* (1994) Ind., 638 N.E.2d 1249, 1252.

1. We note that the appellee, Buehler, has not filed a response brief in this appeal.

2. For present provision regarding modification of visitation, *see* I.C. 31–14–14–2 (Burns Code Ed. Repl.1997).

3. We note that the record contains no explanation for the inordinate seventeen month delay

between the date of the evidentiary hearing upon the modification petition and the date of the judgment. Trial courts should be aware of the urgency of matters concerning child custody, support, visitation, CHINS, parental rights and the like. Accordingly, the proceedings and determinations concerning such matters are to receive expedited consideration.

While use of a more traditional format is preferable, the trial court's order adequately informed the parties of the theory upon which the judge decided the case. Therefore, the court did not err in issuing its findings of fact and conclusions of law in opinion form.

## MODIFICATION OF VISITATION

■ Taylor contends that the trial court's decision to modify visitation was not supported by the evidence. Specifically, Taylor argues that, absent any evidence of endangerment or impairment to M.T., the trial court could not modify visitation. However, Taylor's argument is misplaced because it is erroneously premised upon the language contained in the *dissolution* chapter's visitation modification statute, I.C. 31–1–11.5–24(b).[4] Because Taylor's visitation rights were established through a *paternity* action, the controlling statute is I.C. 31–6–6.1–12(b), found under the paternity chapter of Title 31, and provides that court-ordered visitation may be modified "whenever modification would serve the best interests of the child."

■ Decisions involving visitation rights under the paternity statutes are committed to the sound discretion of the trial court. *Matter of Paternity of Joe* (1985) Ind.App., 486 N.E.2d 1052, 1055. Reversal is appropriate only upon a showing of abuse of discretion. *Id.* Here, the trial court's modification of the visitation schedule was proper because sufficient evidence supported its conclusion that modification would serve M.T.'s best interests.

At the time Buehler filed her Petition for Modification on May 19, 1995, I.C. 31–1–11.5–24(b), dealing with dissolution, provided:

"The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation might endanger the child's physical health or significantly impair his emotional development." [5]

■ However, I.C. 31–6–6.1–12(b), which was the visitation modification statute under the *paternity* chapter at the time Buehler filed her petition provided:

"The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child."

■ Therefore, modifying visitation orders under the *paternity* statutes only require a showing that the modification would serve the best interests of the child. *See Matter of Paternity of A.R.R* (1994) Ind. App., 634 N.E.2d 786, 789. There may be policy reasons which led our General Assembly to create more stringent considerations for dissolution modification of visitation than for paternity visitation, but we have not been apprised of those reasons. Nor do we have the benefit of a legislative history to aid us. Nevertheless, it is clear the legislature intended that the two circumstances be treated differently.[6] The distinction makes a modification of paternity visitation more readily available than modification of dissolution visi-

4. For present provisions, *see* I.C. 31–17–4–1 (Burns Code Ed. Repl.1997) and I.C. 31–17–4–2 (Burns Code Ed. Repl.1997), which are codified under the *dissolution* chapter. Also, in his brief, Taylor cites to I.C. 34–1–11.5–24 when referring to the standards for modifying visitation. However, this seems to be merely a typographical error, as those standards are found under I.C. 31–1–11.5–24.

5. The language of the current provision for visitation modification under the *dissolution* statutes, I.C. 31–17–4–2, remains unchanged from the language of I.C. 31–1–11.5–24(b). In addition to permitting modification whenever it would be in the best interests of the child, the statute includes the additional requirement that the court shall not restrict visitation rights unless the visitation might endanger the child's physical health or significantly impair the child's emotional development.

6. We note that the text of the current statute covering visitation modifications under the paternity chapter, I.C. 31–14–14–2, remains unchanged from the original language contained in I.C. 31–6–6.1–12 as added by Acts 1979, P.L. 277 § 1. However, the legislature has amended other statutes under the paternity chapter in order to expand the requirements for modification beyond a mere showing of best interests of the child. I.C. 31–6–6.1–11(e), as added by Acts 1979, P.L. 277 § 1; P.L. 278–1985, § 6, which covered "custody" modifications under the paternity chapter, originally provided: "The court may modify an order determining custody rights whenever modification would serve the best interests of the child."

However, the current provision covering custody modification, I.C. 31–14–13–6, has been amended to read: "The court may not modify a child custody order unless: (1) modification is in

tation in that the paternity provision looks only to the best interests of the child, while dissolution visitation looks not only to the best interests, but requires a determination of changed circumstance. In any event, we are not at liberty to rewrite the statute to meet our own implementation of what we might deem to be wise and consistent policy considerations.

■ It would seem appropriate to have similar factor considerations whether the determination to be made involves dissolution or paternity, and whether it involves custody or visitation. Under the current scenario, when dissolution custody or visitation, or paternity custody, is involved, a modification depends not only upon the best interests of the child, but upon a changed circumstance in one or more of the factors which must have been considered with regard to the initial custody-visitation determination.[7]

A seeming defect in the modification requirements for custody or dissolution visitation arises from the dictate that, as an absolute, one or more of the original factors has changed. This requirement would preclude a modification of custody when a fact was existent at the time of the original determination, but was unknown (e.g. the now custo-

dial parent was and is an habitual substance abuser or did and continues to neglect or abuse the child). Under such situation, custody, or visitation in a paternity setting, could not be modified. The only apparent way to avoid such absurdity would be to torture the context of the changed circumstance requirement to conclude that *discovery* of the fact constitutes a changed circumstance.

Be that as it may, the legislature has created the apparent dichotomy and resolution of the problem is best left to that branch of government. At a minimum, a different analysis should come from the highest court of our state, not from this intermediate forum. Thus, if the evidence is such as to permit the trial court to have concluded that modification is in the best interests of the child, we must affirm.

Sufficient evidence supported the trial court's conclusion that modification of the previous visitation schedule was in M.T.'s best interests. Once M.T. started to attend school, the prior visitation schedule would have required Taylor to: (1) pick up M.T. Thursday in Chesterton at 6:00 p.m.; (2) return to Hebron that evening; (3) drive M.T. back the following morning to Chester-

the best interests of the child; *and* (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 [I.C. 31–14–13–2] of this chapter." (Emphasis supplied). This express textual change makes it clear that when the legislature intended to expand requirements for modification beyond a mere showing of "best interests of the child", it did so by amending the statutory language.

Because the legislature changed the language regarding custody modification under the paternity statutes, while leaving undisturbed the language regarding visitation modification, the legislature evinced its clear intent that the standard for modification of visitation should remain the "best interests of the child". We therefore analyze the propriety of the trial court's modification under the standard of whether the modification was in the "best interests" of M.T. Courts do not interpret statutes which are clear and unambiguous on their face. *Matter of Grissom* (1992) Ind., 587 N.E.2d 114, 116. A statute which is clear and unambiguous must be given its apparent or obvious meaning. *Id.*

7. At least one case, decided under the former dissolution law, folded the changed circumstance requirement into the more inclusive requirement of the child's best interests.

In *K.B. v. S.B.* (1981) Ind.App., 415 N.E.2d 749, 753, this court held that, while not mandated by statutory language, some change of conditions was required as a prerequisite for modifying terms of visitation contained in a dissolution decree. The court found that, without the requirement of some change of condition for modification, the prior decree delineating the visitation rights would have no finality and visitation rights could be endlessly litigated. The court held:

"This requirement of a change of conditions for modification of visitation rights does not in any way derogate the statutory standard found in I.C. 31–1–11.5–24(b). Rather, the change of conditions must be such that it is in the best interests of the child that a modification of visitation rights be granted since it is clearly the best interests of the child which are controlling." *Id.*

This case could provide an argument that a determination of best interests necessarily carries with it the requisite determination of changed circumstance. One would seriously and legitimately question, however, whether the converse conclusion is permissible, i.e., that a determination of a changed circumstance necessarily means that modification is in the child's best interests.

ton to attend school; and (4) pick up M.T. after school and return to Hebron for the weekend. The court also made the reasonable finding that it was unfair for M.T. to spend every weekend away from her mother.

Given these facts, it was reasonable for the court to conclude that a new visitation arrangement would be in her best interests. It was permissible to conclude that the prior visitation schedule was disruptive to M.T.'s school schedule and week-day routine. Also, the court's finding that it was "unfair" for M.T. to spend every weekend away from her mother was properly considered as a factor in determining whether modification was in M.T's best interests.

■ Finally, we hold that the trial court erred in failing to make a determination with regard to Taylor's allegations of contempt relative to Buehler's refusal to allow visitation on Thursday evenings, as ordered by the court. The uncontroverted evidence reflects that pending modification Buehler repeatedly, over a two year period, denied Taylor visitation from Thursdays through Sundays at noon. It further appears that Buehler had indicated a desire to prevent all contact by the child with her father and had previously been held in contempt for denying visitation. In this connection, again we note that Buehler has not filed a brief in opposition to Taylor's arguments. Although the precise situation is not likely to reoccur in light of the modification, there is arguably relief which is available. Taylor requested reasonable attorney fees, as occasioned by the necessity to file the contempt petitions, in order to enforce his then existent and court-ordered visitation rights. Upon remand, it would certainly be appropriate and within the court's prerogative to award such fees.

The judgment of the trial court modifying visitation is affirmed. The cause is remanded, however, for a determination upon the merits of Taylor's petitions for contempt and for such relief as is deemed appropriate.

FRIEDLANDER and KIRSCH, JJ., concur.