# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**

May 06 2019, 9:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Terry A. White
Olsen & White, LLP
Evansville, Indiana

ATTORNEY FOR APPELLEE

Michael H. Hagedorn
Tell City, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Paternity of C.L.H., Blake A. Hensley, *Appellant-Respondent,* | May 6, 2019 |
| | Court of Appeals Cause No. 18A-JP-3038 |
| v. | Appeal from the Perry Circuit Court |
| | The Honorable William E. Weikert, Special Judge |
| Alyssa N. Troesch, *Appellee-Petitioner.* | Trial Court Cause No. 62C01-1002-JP-30 |

**Riley, Judge.**

# STATEMENT OF THE CASE

[1] Appellant-Respondent, Blake Hensley (Father), appeals the trial court's Order in favor of the Appellee-Petitioner, Alyssa Troesch (Mother), with respect to parenting time, and the trial court's finding of contempt.

[2] We affirm.

# ISSUES

[3] Father raises three issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion by ordering Father to complete eighteen months of drug rehabilitation before seeking unsupervised parenting time;

(2) Whether the trial court abused its discretion in not finding Mother in contempt for denying Father parenting time; and

(3) Whether the trial court abused its discretion by finding Father in contempt for nonpayment of child support and Mother's attorney's fees.

# FACTS AND PROCEDURAL HISTORY

[4] Mother and Father are the biological parents of C.H. (Child), born on August 6, 2009. At the time of the Child's birth, Mother and Father were not married. On May 5, 2010, Father's paternity and child support were established. Through the same order, Mother was to have sole legal and physical custody of the Child, subject to Father's parenting time. Mother later married Jon

Fulkerson (Fulkerson), and the two have a son, G.F., born in 2016. Mother, Fulkerson, the Child, and the Child's younger brother, live in Santa Claus, Indiana.

[5] On July 7, 2014, Father filed a verified petition for modification of custody, parenting time, and child support. Mother also filed a petition to modify on July 14, 2014. On February 19, 2015, Mother filed a petition to terminate Father's parenting time, arguing that Father had mental health and drug addictions issues. On March 17, 2015, Father responded by filing an emergency verified petition for modification of custody, parenting time, and child support. In that petition, Father disclosed that he was "entering an 8 to 10-month drug rehabilitation program at the House of Hope, Brazil, Indiana." (Appellant's App. Vol. II, p. 20).

[6] On June 23, 2015, Father filed a contempt petition against Mother, alleging that Mother had refused to allow him to exercise parenting time. On August 19, 2015, the trial court conducted a hearing on Father's contempt petition but denied the petition. However, the trial court temporarily ordered that beginning August 21, 2015, Father was to exercise supervised parenting time every other weekend from Friday at 6:00 p.m. until Sunday at 6:30 p.m. Paternal grandmother (Grandmother) or paternal aunt (Aunt) were to supervise the visits. Also, the trial court's order directed Father to submit to random drug testing and to continue attending Alcoholics Anonymous, or Narcotics Anonymous, and verify his attendance at those meetings. Additionally, Father was ordered to notify the trial court within forty-five days that he was enrolled

in counseling. The trial court then set a final hearing for all the parties' pending motions for March 2016.

[7] After several continuances, on May 12, 2016, the trial court began hearing evidence on the parties' pending motions. A final hearing was conducted on June 3, 2016. The trial court then took the matter under advisement. In the interim, the trial court ordered Father to submit a hair-follicle drug test through the Dubois County Probation Department, and the trial court reserved ruling on Father's request to take the Child on a family vacation until it received the results of the hair-follicle drug screen. On June 23, 2016, the trial court denied Father's request to take the Child on vacation. Six days later, on June 29, 2016, the trial court issued the following order:

> Since taking this matter under advisement, the [c]ourt has received several recent drug tests from March 10, 2016, April 4, 2016, April 18, 2016, May 24, 2016, and June 3, 2016, all of which are positive for THC. Considering this new evidence, the [c]ourt will make no ruling on this case without further testimony.

(Appellant's App. Vol. II, p. 10).

[8] On August 22, 2016, following a pretrial conference, the trial court requested the appointed Guardian *ad litem*, Susan Elaine Umpleby (GAL Umpleby), to "re-open her case and submit an Amended Report" prior to the next hearing on October 5, 2016. (Appellant's App. Vol. II, p. 10). After several continuances, on December 1, 2016, the parties and GAL Umpleby appeared in court. The trial court then entered an order continuing Father's parenting time schedule of

every other weekend from Friday at 6:00 p.m. to Sunday at 6:30 p.m., with Grandmother or Aunt supervising the visits. On March 30, 2017, Father filed yet another contempt petition against Mother, arguing that Mother was violating the parenting time order.

[9] On June 27, 2017, Father reverted to using drugs, broke into his sister's house, and was charged with Level 6 felony residential entry. Father spent several days in jail following his arrest. On July 14, 2017, the parties appeared in court for Father's petition to modify custody, parenting time, and child support filed on July 7, 2014; Mother's petition to modify filed on July 14, 2014; and Father's contempt petition against Mother for parenting time filed on March 30, 2017. By agreement, Mother and Father resolved that Father's visits with the Child would be restricted to daytime and would be supervised due to Father's drug addiction. The trial court then took the matter under advisement, and it later issued the following order:

> 3. [] Father's parenting time shall be restricted and supervised as follows:
>
> > a. Every other weekend on Saturday from 9:00 a.m. until 7:00 p.m. and Sunday from 9:00 a.m. until 7:00 p.m.
> >
> > b. One (1) mid-week visit for three (3) hours from 4:30 p.m. until 7:30 p.m.;
> >
> > c. All scheduled special days and holidays for ten (10) hours;

d.   All parenting time must be primarily supervised by [Grandmother], or if [Grandmother] is unavailable then by . . . [Aunt], or [other members of Father's family].

* * * *

g.   [] Father's parenting time shall be supervised and restricted until he is able to satisfy the [c]ourt that he has rehabilitated himself from his drug addiction by undergoing regular drug testing for a period of no less than eighteen (18) months at his sole cost and expense.  Said testing shall consist of weekly drug urine tests and a hair follicle testing once every seventy (70) days with the first urine test to start on July 21, 2017[,] and each week thereafter and the first hair follicle test to start on September 14, 2017[,] and every seventy (70) days thereafter . . . .

h.   If each and every hair follicle test and drug urine tests have been negative and not diluted after nine (9) months of the Father's rehabilitation program, [] Father shall then be allowed to begin supervised parenting time pursuant to the Indiana [Parenting Time] Guidelines . . . including overnight visits.

* * * *

j.   After the eighteen (18) month rehabilitation period has been successfully completed, [] Father may petition the [c]ourt for unsupervised parenting time with the [] [C]hild pursuant to the Indiana Parenting Time Guidelines.

* * * *

6. [] Father shall pay child support in the amount of Sixty-Seven Dollars ($67.00) per week beginning on Friday, July 21, 2017[,] and shall continue each Friday thereafter for ninety (90) days. [] Father shall then begin paying child support in the amount of One Hundred Dollars ($100.00) per week plus an additional Twenty Dollars ($20.00) per week toward the arrearage amount of $460.05 as July 14, 2017. The aforesaid child support obligation has been calculated in accordance with the Child Support Guidelines Worksheet filed herewith . . .

* * * *

9. The Parties are ordered to equally divide the GAL fees due in the sum of $4,470.00. As of June 1, 2017[,] that remaining balance owed is $575.00. [] Mother is responsible for $340.00 and the Father is responsible for $235.00 of the remaining balance owed.

10. [] Father is ordered to pay $2,000.00 of the Mother's attorney fees in this matter to her attorney within six (6) months from July 27, 2017.

(Appellant's App. Vol. II, pp. 28-30)

[10] On September 16, 2017, an Indiana State Police officer initiated a traffic stop due to Father's outstanding warrant from Warrick County. Instead of stopping, Father, who was under the influence of methamphetamine and marijuana and had a passenger in his vehicle, involved the police in a high-speed chase for "thirty-five plus minutes." (Tr. Vol. II, p. 27). Father rear-ended and then rammed the passenger door of the police vehicle to avoid apprehension. Father then drove his vehicle off the highway, through a campsite, and into a soybean

field. Father ultimately left his vehicle and ran into the Ohio river. The police did not pursue Father into the water, and after Father swam back to the river bank, the police tased Father three times to apprehend him.

[11] On the same day, the State charged Father with two Level 6 felonies for resisting law enforcement committed with a deadly weapon, three Level 6 felonies for criminal recklessness committed with a deadly weapon, one Class A misdemeanor for operating while intoxicated endangering a person, three Class A misdemeanors for resisting law enforcement, and one Class B misdemeanor for reckless driving causing damage to property. Pursuant to a plea agreement, Father pleaded guilty to two Level 6 felonies and two Class A misdemeanors. A judgment of conviction was entered with respect to those charges, and the trial court imposed an aggregate sentence of three years to be served in community corrections. While Father was released after nine months, Father continued his sentence through home detention and probation.

[12] On July 11, 2018, following his release from community corrections, Father filed a contempt petition against Mother, alleging that Mother was denying him parenting time. On September 4, 2018, GAL Umpleby filed an updated report. Father also filed a petition to modify his visitation on September 10, 2018, arguing that because he was sober from alcohol and drug-free for almost a year,

his previously unsupervised overnight parenting schedule of every other weekend from Friday 6:00 p.m. to Sunday 6:30 p.m. should be reinstated.[1]

[13] On September 12, 2018, the trial court conducted a final evidentiary hearing on the parties' pending petitions and motions—*i.e.*, Father's contempt petition against Mother regarding his parenting time filed on July 11, 2018, and his motion to modify his parenting time filed September 10, 2018; also, Mother's petition to terminate parenting time filed on September 22, 2017, and Mother's petition for contempt against Father for non-payment of child support and attorney fees, which was filed at the start of the evidentiary hearing. A further hearing was conducted on September 17, 2018. The trial court thereafter took the matter under advisement and ordered the parties to file their proposed findings.

[14] On November 21, 2018, the trial court issued findings of fact and conclusions thereon. In the Order, the trial court denied Mother's request to terminate Father's parenting time. Citing to the July 14, 2017 Order requiring Father to undergo eighteen months of rehabilitation and drug screening, the trial court

---

[1] Father's motion referenced a temporary parenting time order that was entered on March 7, 2016 and reaffirmed on December 1, 2016. However, that order was moot since it was replaced by the July 14, 2017 Order which altered the parenting time schedule and abolished Father's overnight parenting time with the Child.

ordered Father to comply with that order beginning November 28, 2018. As to the parties' contempt petitions, the trial court declined to find Mother in contempt for denying Father parenting time; however, it found Father in contempt for nonpayment of child support and Mother's attorney fees.

Father now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

Where, as here, the trial court enters findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), our standard of review is well-settled. First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. *Kwolek v. Swickard*, 944 N.E.2d 564, 570 (Ind. Ct. App. 2011), *trans. denied*. In deference to the trial court's proximity to the issues, we disturb the judgment only when there is no evidence supporting the findings or the findings fail to support the judgment. *Id*. We do not reweigh the evidence but consider only the evidence favorable to the trial court's judgment. *Id*. Challengers must establish that the trial court's findings are clearly erroneous. *Id*. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. *Id*. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. *Id*. Additionally, a judgment is erroneous under Indiana Trial Rule 52, if it relies on an incorrect legal standard. *Id*. We evaluate questions of law *de*

*novo* and owe no deference to a trial court's determination of such questions. *Id*.

## II. *Parenting Time*

Decisions involving parenting time rights under the paternity statutes are committed to the sound discretion of the trial court. *Taylor v. Buehler*, 694 N.E.2d 1156, 1159 (Ind. Ct. App. 1998), *trans. denied*. Reversal is appropriate only upon a showing of an abuse of that discretion. *Id*. When reviewing the trial court's decision, we neither reweigh the evidence nor reexamine the credibility of the witnesses. *Walker v. Nelson*, 911 N.E.2d 124, 130 (Ind. Ct. App. 2009).

Indiana has long recognized that the right of parents to visit their children is a precious privilege that should be enjoyed by noncustodial parents. *Lasater v. Lasater*, 809 N.E.2d 380, 400 (Ind. Ct. App. 2004). Accordingly, a noncustodial parent in a paternity action is generally entitled to reasonable parenting time rights. *See* Ind. Code § 31-14-14-1(a). The right of parenting time, however, is subordinated to the best interests of the child. *Lasater*, 809 N.E.2d at 401. Indiana Code section 31-14-14-1, which outlines the parenting time rights of a noncustodial parent in a paternity action, provides:

> (a) A noncustodial parent is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time might:
>
> (1) endanger the child's physical health and well-being; or

(2) significantly impair the child's emotional development.

[19] Indiana Code section 31-14-14-2 provides, "The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child." Even though Indiana Code section 31-14-14-1 uses the term "might," this court interprets the statute to mean that a court may not restrict parenting time unless that parenting time would endanger the child's physical health or well-being or significantly impair the child's emotional development. *Walker*, 911 N.E.2d at 130. By its plain language, Indiana Code section 31-14-14-1 requires a court to make a specific finding of physical endangerment or emotional impairment before placing a restriction on the noncustodial parent's parenting time. *Id*. A party who seeks to restrict parenting time rights bears the burden of presenting evidence justifying such a restriction. *Farrell v. Littell*, 790 N.E.2d 612, 616 (Ind. Ct. App. 2003). The burden of proof is the preponderance of the evidence standard. *In re Paternity of P.B.*, 932 N.E.2d 712, 720 (Ind. Ct. App. 2010).

[20] At the September 12, and 17, 2018, evidentiary hearing, two motions were litigated. The first one was Father's motion to modify his parenting time; however, we note that Father's motion referenced two orders issued in 2016, but those orders were moot after the issuance of the July 14, 2017 Order which ultimately replaced the 2016 orders. The second pleading that was contemplated was Mother's petition to terminate Father's parenting time as specified in the July 14, 2017 Order.

[21]    Mother argues that in order for Father to have invoked the trial court's jurisdiction to eliminate the restrictions on his parenting time under the July 14, 2017 Order, Father was required to file a petition under Indiana Code section 31-14-14-2. Mother continues, "Under this statute [Father] was required to submit evidence that modification of the July 14, 2017 Order would serve [the Child's] best interests. Filing a petition under this statute would also open an inquiry as to whether the current parenting time restrictions with [the Child] were essential and necessary to protect [the Child's] physical health and well-being; or to prevent significant impairment of his emotional development under Ind. Code § 31-14-14-1." (Appellee's Br. p. 13).

[22]    While we agree with Mother that the only substantive pleading pending before the trial court was Mother's petition to terminate Father's parenting time, we note that at the evidentiary hearing, the parties contested Father's supervised parenting time as per the July 14, 2017 Order, thus we find that Father's claim is not waived for appellate review. *See Dedelow v. Pucalik*, 801 N.E.2d 178, 183-84 (Ind. Ct. App. 2003).

[23]    In the Order denying Father's request for unsupervised parenting time and maintaining the restrictions established by the July 14, 2017 Order, the trial court entered the following specific findings and conclusions:

> 12. Following the entry of the July 14, 2017 Order [Father] exercised the parenting time provided to him pursuant to paragraphs 3.a. and b. of such Order until his arrest and subsequent incarceration on September 16, 2017.

13. On September 16, 2017 [Father] was arrested and subsequently prosecuted for numerous felonies and misdemeanors involving a [high-speed] car chase.

14. Whitney Berry, [Father's] passenger, was exposed to substantial risk of bodily injury during the chase and [Father] reckless and intentional conduct.

15. [Father] was under the influence of methamphetamines and marijuana while engaged in the foregoing conduct.

16. [Father] entered into a plea agreement in all of the [above-mentioned] crimes, which were committed in Perry County.

17. [Father] was incarcerated in the Perry County Detention Center from September 16, 2017 until July 14, 2018.

* * * *

19. The agreement of the parties as entered on July 14, 2017, contemplated that [Father] would have eighteen (18) months to prove his sobriety while exercising parenting time as agreed. [Father] has never complied with the restricted and supervised patenting time conditions he agreed to as set forth in paragraph 3.a. inclusive of [3.]i. of the July 14, 2017 Order. [Father's] voluntary compliance of the restricted and supervised parenting time was contemplated when the Order was entered. Being sober and drug-free while incarcerated in the Perry County Detention Center does not satisfy the restrictions. No visitation took place during [Father's] incarceration. Likewise, the terms and conditions imposed, coercively, through the Perry County Community Corrections do not satisfy the restricted and supervised parenting time conditions contained in the July 14, 2017 Order.

* * * *

21. [Father] has spent much of his adult life using illegal substances, marijuana, opioids, K2 or spice, klonopin, and heroin.

22. During the past 4 years [Father] has consumed illegal substances, got high and impaired, got arrested and spent time in jail, gone to rehab for months at a time, and then repeated the cycle. [Father] has been in and out of [Child's] life.

23. [Father] has engaged in a pattern of conduct throughout the past 4 years intentionally and recklessly endangering the lives of other people and property. The conduct is not isolated, it is not a one-time thing. [Child] does not live in a vacuum. He is aware of [F]ather's conduct. His relationship with [Father] is interrupted by arrest and incarceration and rehabilitation. [Father's] relationship with [Child] due to his conduct and inability to control his cravings for illegal substances, is abnormal and aberrant. Based on the facts hereinabove set forth, the [c]ourt finds that [Father's] parenting time with [Child] would endanger the child's physical health and well-being or significantly impair [Child's] emotional development without supervision. Provided, however, the [c]ourt is not required to grant [Mother's] Petition to Terminate Parenting Time for there is already a supervised and restricted parenting time order in place with which [Father] has not complied. As previously stated the order is a precondition to unsupervised parenting time.

24. This [c]ourt expects and anticipates that [Father] will complete the eighteen (18) month rehabilitation period set forth in paragraph 3.j. of the July 14, 2017 Order before he receives unsupervised parenting time. The framework to unsupervised parenting time has been established. There is no reason to ignore the previous Order. [Father's] Motion to Modify Custody

Visitation is denied. The Motion seeks to modify an Order of March 7, 2016 reaffirmed in a decision of December 1, 2016. Those orders are moot and replaced by the July 14, 2017 Order. The [c]ourt may modify an order granting or denying parenting time rights whenever the modification would serve the best interests of the child. I.C. [§] 31-14-14-2.

25. The [c]ourt is reestablishing the agreement of the parties as reflected in the July 14, 2017 Order. This Order shall be placed in effect immediately on the date of this Order. Paragraph [3.g.] of the July 14, 2017 Order is amended as follows: Drug testing shall consist of weekly drug urine tests and hair follicle testing once every seventy (70) days, with the first urine test to start on November 28, 2018, and each week thereafter, and the first hair follicle test to start on January 28, 2019, and every seventy (70) days thereafter. []Father shall submit the result of his testing to [] [M]other on demand, and shall allow [] [M]other access to all testing records.

(Appellant's App. Vol. II, pp. 23-24).

[24]     Turning to the heart of Father's claim, Father contends that, since he had been "sober" from alcohol, "and drug-free for a period of one-year at the time of his September 2018 hearing," the trial court should have relieved him all the drug screen and rehabilitation obligations contained in the July 14, 2017 Order. (Appellant's Br. p. 11).

[25]     Mother argues that to the extent the trial court would be required to engage in the two-prong analysis required by Indiana Code section 31-14-14-1(a) in restricting Father's parenting time, there is ample evidence supporting the trial court's Order upholding the restrictions on Father's parenting time. At the

evidentiary hearing, GAL Umpleby testified as to Father's lengthy battle with drug addiction since she became involved in the case in 2013 and testified that the only time Father was "sober" was during the time he was incarcerated. (Tr. Vol. II, p. 98). When questioned whether it was appropriate for Father to have unsupervised visits with the Child, GAL Umpleby testified that she was not comfortable lifting Father's supervised visits, and her position was summarized with the statement, "I think we need to see how [Father] does on his own . . .without the incarceration." (Tr. Vol. II, p. 98).

[26] Father's contention that he had been sober and drug-free for a period of one year at the time of the September 2018 evidentiary hearing wholly ignores the circumstances and context in which the July 14, 2017 Order was fashioned. The July 14, 2017 Order contemplated voluntary drug rehabilitation, not forced drug rehabilitation through incarceration. There were no drug screens or follicle tests administered during Father's incarceration, and Father admittedly stated that following his release from community corrections, he had not undergone any drug screenings. Obviously, Mother did not have access to any of his medical reports during that time to ensure that Father was not using drugs.

[27] Here, we find that the evidence supports the trial court's reestablishment of the July 14, 2017 Order, which requires Father to undergo drug rehabilitation before gaining unsupervised visits with the Child. Significantly, the trial court found that because Father had not addressed his drug addiction issues, unsupervised visitation was not in the Child's best interests, and that

unsupervised visitation would be detrimental to the Child's emotional and physical health. Father has not shown that the evidence does not support the findings or that the findings do not support the trial court's conclusion to maintain restrictions to his parenting time. Thus, Father's contentions that the trial court abused its discretion by denying him unsupervised parenting time fails.

### III. *Contempt*

Whether a person is in contempt of a court order is a matter left to the trial court's discretion. *Meyer v. Wolvos*, 707 N.E.2d 1029, 1031 (Ind. Ct. App. 1999), *trans. denied*. When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses, and unless after a review of the entire record we have a firm and definite belief a mistake has been made by the trial court, the trial court's judgment will be affirmed. *Piercey v. Piercey*, 727 N.E.2d 26, 31-32 (Ind. Ct. App. 2000). "In order to be punished for contempt of a court's order, there must be an order commanding the accused to do or refrain from doing something." *Id.* at 32 (citing *Adler v. Adler*, 713 N.E.2d 348, 354 (Ind. Ct. App. 1999)). To hold a party in contempt for a violation of a court order, the trial court must find that the party acted with "willful disobedience." *Id.*

Father argues that the trial court abused its discretion by failing to find Mother in contempt after Mother willfully and intentionally denied him parenting time, as per the July 14, 2017 Order. Also, Father argues that he did not willfully

violate the trial court's Order for failing to pay his child support obligation and Mother's attorney's fees.

A. *Parenting Time Refusal*

[30] Father's contempt petition against Mother was filed July 12, 2018 following his release from incarceration in June 2018. The trial court, however, found that Mother was not in contempt of court for denying Father parenting time as stipulated by the July 14, 2017 Order. In a section entitled "Contempt Proceedings" the trial court issued the following order, in part:

> [Mother] did not willfully disobey this [c]ourt's July 14, 2017 parenting time order considering the evidence and reasonable inferences. [Mother's] actions were in response to [Father's] very serious criminal conduct; . . . her fear for [Child's] safety and best interests; and, the complete absence of any effort on her part to alienate [Child] from Father. Accordingly, the [c]ourt finds that [Mother] is not in contempt . . . .

(Appellant's App. Vol. II, p. 25).

[31] In determining whether Mother was in contempt of the parenting time order, the trial court found GAL Umpleby's report[2] instructive, and it referenced

---

[2] GAL Umpleby's report was not included in the record for our review.

relative portions as follows: "[Father] was very frustrated upon his release from incarceration that he was not able to fall back into the parenting time schedule established by the July 2017 order." (Appellant's App. Vol. II, p. 25). The report continues

> [Mother] believes that this entire situation has been incredibly unfair to [Child] and that he deserves consistency and a reliable, dependable father. [Mother] wants to be able to protect [Child]. She does agree there is value in [Child's] relationship with his [Father], but she is struggling with how to keep [Child] safe. [Mother] is not spiteful and maintains no hatred against [Father], but enough is enough. [Father] has battled addiction [during the Child's] entire life. Last September, [Father] was using methamphetamine and heroin. He was forced into sobriety as a result of incarceration. [Mother] doesn't know if it is a genuine sobriety, as this has been a years-long battle for [Father].

(Appellant's App. Vol. II, p. 25).

[32]     At the evidentiary hearing, Mother admitted that she had denied Father parenting time. When asked to explain her reasons, Mother testified that she was mostly concerned about the Child's safety considering Father had unresolved drug addiction issues. Mother further explained that it was not Father's use of "narcotics" or "marijuana," but it was the "methamphetamine" use that she found most troubling and she continued, "I feel like [the Child] should not be in any kind of environment that would expose him to any kind of harm." (Tr. Vol. II, p. 158).

[33] When asked if Mother had engaged in any sort of pattern to alienate the Child from Father, GAL Umpleby stated, the "short answer would be, no." (Tr. Vol. II, p. 135). GAL Umpleby then stated that although she felt like Mother was "being a little overprotective" of the Child, after Father relapsed to using drugs in June 2017 thereby committing the residential entry offense, and further relapsed in September 2017 which culminated in multiple criminal offenses by Father, GAL Umpleby testified that she began to understand Mother's reservations. (Tr. Vol. II, p. 135).

[34] At the time of the contempt hearing, Father had not complied with the drug screens, follicle hair testing, or completed eighteen months of drug therapy as mandated by the July 14, 2017 Order; rather, Father had been forced into sobriety because of his incarceration. Mother's conduct is short of willful disobedience given the fact that Father had not successfully completed the mandated drug rehabilitation, and there were no guarantees at that point that Father was sober from drugs and alcohol. Accordingly, we find that Mother met her burden of showing that her conduct did not amount to willful disobedience; therefore, we affirm the trial court's decision.

## B. *Father's Contempt*

[35] Based on a child support worksheet, the July 14, 2017 Order required Father to pay $67 weekly child support beginning July 21, 2017 for 90 days, and then pay $100 per week plus $20 per week toward the arrearage amount of $460.05 as of July 14, 2017. Also, the trial court ordered Father to pay $2,000 of Mother's attorney fees.

[36]     In the Order finding Father in contempt, the trial court determined that

> 34.  No child support was paid from July 21, 2017 until October 31, 2017.  From October 31, 2017 inclusive of September 5, 2018, $1,990.00 was paid in child support.  The child support arrearage has increased inclusive of September 5, 2018 to $4,041.05.  No payments were made on attorney fees during this time . . . .

> 35.  The evidence and reasonable inferences require a determination that [Father] willfully disobeyed the child support order and order requiring payment of attorney fees.  [Father] acknowledged the financial obligations but stated that he did not have the money to pay and was incarcerated which prevented him from paying.  [Father] did not take any action to suspend or relieve him of the financial obligations.  [Father's] intentional conduct in committing the criminal offenses was of his own making and does not constitute a legitimate excuse for noncompliance with the support order and order requiring payment of attorney fees.  Therefore, the [c]ourt finds that [Father] is in contempt for not paying child support and the attorney fee previously ordered.  [Father] shall purge himself of the contempt by paying an additional $50.00 per week on the arrearage of $4,041.05 beginning on the first Friday following the entry of this Order and continuing until the arrearage is paid in full; and by paying Federal and State income tax refunds received on the arrearage until it is paid in full.

> 36.  [Father] is also ordered to pay $2,000.00 of [Mother's] attorney fees as previously ordered.  Said attorney fees shall be paid in full within six (6) months from the filing of this order.

> 37.  In the event [Father] fails to purge himself of his contempt, the [c]ourt reserves jurisdiction over the contempt finding and judgment to issue further coercive orders.

[37] Indiana courts have long held that, "after support obligations have accrued, a court may not retroactively reduce or eliminate such obligations." *Whited v. Whited*, 859 N.E.2d 657, 661 (Ind. 2007). Father's contention on appeal is that the trial court should have suspended him from his child support and Mother's attorney's fees obligation after he was incarcerated in September 2017.

[38] In *Lambert v. Lambert*, 861 N.E.2d 1176, 1179 (Ind. 2007), our supreme court specifically rejected the idea that child support should be completely suspended while a parent is incarcerated, concluding that

> [a]dopting a system that considers incarceration an absolute justification for the reduction or suspension of child support appears inconsistent with the policy embedded in Indiana's statutes . . . [W]e cannot imagine that the legislature intended for incarcerated parents to be granted a full reprieve from their child support obligations while their children are minors.

[39] The *Lambert* court also held that an incarcerated parent should not be considered "voluntarily" unemployed or underemployed under the Child Support Guidelines. *Id.* at 1180. Although criminal activity reflects a "voluntary choice," it is "not quite the same" as voluntarily refusing to work because "[t]he choice to commit a crime is so far removed from the decision to avoid child support obligations that it is inappropriate to consider them as identical." *Id.* "[I]mposing impossibly high support payments on incarcerated parents acts like a punitive measure and does an injustice to the best interests of the child by ignoring factors that can, and frequently do, severely damage the parent-child relationship."

[40] Although the *Lambert* court dealt with the initial setting of the incarcerated parent's child support obligation, in *Clark v. Clark*, 902 N.E.2d 813, 817 (Ind. 2009), our supreme court relied on the reasoning of *Lambert* to hold that incarceration may serve as a changed circumstance so substantial and continuing as to make the terms of an existing support order unreasonable, thereby justifying modification of the support order. As in *Lambert*, the *Clark* court held that "a support obligation should be set based on the obligated parent's actual earnings while incarcerated (and other assets available to the incarcerated person)." *Id*.

[41] Father's argument that his child support and attorney's fees obligation should have been suspended due to his incarceration is clearly incompatible with *Lambert*. Moreover, if Father wished to have had his child support and Mother's attorney's fees obligation as per the July 14, 2017 Order modified due to his incarceration, as per *Clark*, he should have filed a petition to modify his child support. For whatever reason, Father did not file such a petition. Accordingly, we find that Father's failure to pay his child support and Mother's attorney's fees, was a willful violation of a court order. As such, we conclude that the trial court did not abuse its discretion by finding Father in contempt.

## CONCLUSION

[42] Based on the foregoing, we conclude that the trial court did not abuse its discretion by ordering Father to complete eighteen months of drug rehabilitation before receiving unsupervised parenting time with the Child.

Also, we conclude that the trial court did not abuse its discretion by concluding Mother was not in contempt for denying Father parenting time, or for finding Father in contempt for nonpayment of child support and Mother's attorney's fees.

[43] Affirmed.

[44] Bailey, J. and Pyle, J. concur